IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

CHRISTOPHER WEYMOUTH,
    Plaintiff,

v.                                     Case No.  3:11cv282/MCR/CJK

MICHAEL J. ASTRUE,
Commissioner of Social Security,
    Defendant.

_____

REPORT AND RECOMMENDATION

    This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b), and NORTHERN DISTRICT OF FLORIDA LOCAL RULES 72.1(A), 72.2(D), and 72.3, relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. §§ 401-1400v.  The case is now before the court pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying claimant's application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401-34, and Supplemental Security Income under Title XVI of the Act, 42 U.S.C. §§ 1381-83.

    Upon review of the record before this court, I conclude that the findings of fact and determinations of the Commissioner are supported by substantial evidence.  The decision of the Commissioner, therefore, should be affirmed, and the application for benefits denied.

## PROCEDURAL HISTORY

Claimant, Christopher John Weymouth (who will be referred to by name, as plaintiff, or as claimant), filed his applications for benefits in June 2007, and they were denied initially and on reconsideration. T. 12, 130-39, 56-58, 63-64.[1] After a hearing before an Administrative Law Judge ("ALJ"), at which claimant was represented by counsel, the ALJ issued an unfavorable decision. T. 12-21. The Appeals Council of the Social Security Administration denied a request for review, T. 1-6, rendering the ALJ's decision the final decision of the Commissioner for purposes of this review.

## FINDINGS OF THE ALJ

In the written decision the ALJ made a number of findings relative to the issues raised in this appeal:

1. The claimant meets the insured status requirements of the Act through March 31, 2008.

2. The claimant has not engaged in substantial gainful employment since April 1, 2007.

3. The claimant has the following severe impairments: Wolff-Parkinson-White Syndrome, ventricular tachycardia, chronic obstructive pulmonary disease, hypertension, and status post right knee meniscus tear.

---

[1] The administrative record, as filed by the Commissioner, consists of ten volumes (docs. 5-2 through 5-11), and has 559 consecutively numbered pages. References to the record will be by "T." for transcript, followed by the page number.

*Case No: 3:11cv282/MCR/CJK*

  4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.

  5. The claimant has the residual functional capacity to perform less than a full range of medium work.  He is able to perform lifting up to the heavy exertional level by lifting, carrying, pushing/pulling 50 pounds frequently and 100 pounds occasionally; he can stand for a total of 8 hours in an 8-hour workday, sit for a total of 8 hours in an 8-hour workday, but is restricted to walking for durations of no more than 30 minutes at a time and requires use of a cane to walk for distances more than 15 feet; he is limited to frequent use of the right lower extremity in operating foot controls; he can do occasional climbing of stairs, ramps, ladders, or scaffolds; he can frequently operate motor vehicles, but may only occasionally be exposed to extreme cold, dust, odors, fumes, and pulmonary irritants; and he is restricted to unskilled work due to concentration deficits attributable to mild to moderate pain and to his medications.

  6. The claimant is unable to perform his past relevant work.

  7. The claimant was forty years old at the alleged onset of his disability.

  8. The claimant has a high school education and can communicate in English.

  9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform.  T. 14-20.

## STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied by the ALJ. *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). With reference to other standards of review, the Eleventh Circuit has said, "'Substantial evidence is more than a scintilla . . . .'" *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 62 (11th Cir. 2010) (quoting *Lewis*, 125 F.3d at 1439). Although the ALJ's decision need not be supported by a preponderance of the evidence, "it cannot stand with a 'mere scintilla' of support." *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986). The reviewing court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Secretary[.]'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Nevertheless, a reviewing court may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." *Tieniber v. Heckler*, 720 F.2d 1251,

1253 (11th Cir. 1983).  In sum, review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record." *Flynn v. Heckler*, 768 F.2d. 1273, 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10–cv–725–FtM–29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[2]  The recitation of medical and historical facts of this case, as set out below, is based upon my independent review.

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff is not only unable to do her previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, he is not disabled.

---

[2] The Eleventh Circuit speaks not only of independent review of the administrative record, but reminds us it conducts *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision.  *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 11th Cir. 2002).

2. If the claimant is not performing substantial gainful activity, his impairments must be severe before he can be found disabled.

3. If the claimant is not performing substantial gainful activity and he has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if his impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent him from doing his past relevant work, he is not disabled.

5. Even if the claimant's impairments prevent him from performing his past relevant work, if other work exists in significant numbers in the national economy that accommodates his residual functional capacity and vocational factors, he is not disabled.

Claimant bears the burden of establishing a severe impairment that keeps him from performing his past work. *See* 20 C.F.R. § 404.1512. The Eleventh Circuit has explained the operation of step five. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001) ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not

specifically provided for in the statutes or regulations. *See Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987) ('The shifting of the burden of proof is not statutory, but is a long-standing judicial gloss on the Social Security Act')).").

FACT BACKGROUND AND MEDICAL HISTORY[3]

Plaintiff, aged forty-three at the time of the decision, claimed in his application to be disabled due to "two strokes/heart syndrome/right knee problem." T. 149. He described, as follows, his limited ability to work: "I do not have very much energy, if I get too hot or lots of stress, my heart would start (racing) uncontrollable, I would then pass out or black out. I have been informed that I am not to drive. My doctor told me not to drive or work." T. 149. These statements appear on the Adult Disability Report dated June 6, 2007. The Disability Report lists past work experience as cook/grill operator, driver, meat slicer, "parts pro," food stocker, and re-plumber. T. 150.

Due to the nature of the issue stated by the plaintiff, the medical history is not disputed. Plaintiff disputes only the significance afforded by the ALJ to one consultative report. For this reason, the bulk of the medical facts set out below are condensed from the ALJ's order. T. 16-19. (For other facts specific cites to the record are provided.)

Mr. Weymouth described suffering from sharp chest pain, bad headaches, and pain in his legs as well as constant dehydration. He took a number of medications that he claimed caused extensive side effects, limiting his daily activities. At the

---

[3] Although intended to be thorough, and to provide an overview of claimant's history of care and treatment, the synopsis of medical evidence will be supplemented as called for in the Analysis section.

hearing, claimant testified that he had blackouts with breathing and over-exertion. T. 32.  He was unable to do his job because the physical exertion and blackouts made that impossible.  T. 33.

Claimant is functionally limited due to continued right knee pain.  Studies from 1999 revealed traumatic arthropathy of the right knee with a medial meniscus tear. He subsequently had surgery and rehabilitation for that condition and was allowed to return to unlimited work within eight to twelve weeks.  Treatment records indicate that claimant had a normal gait.  Although physical examination notes revealed subjective complaints of joint pain, muscle cramps, pain, and myalgia, the same records are absent findings of joint stiffness, swelling, atrophy, or weakness.  Mr. Weymouth had a full range of motion in all joints, was well developed, had normal posture and gait.  Accordingly, the ALJ concluded that the knee condition supported some functional limitation, but was inconsistent with the degree of exertional limitations claimed by Mr. Weymouth.  Radiological chest studies from April and May 2007 indicated no acute disease.  On physical examination in June 2007, claimant was well-developed, well-nourished, and in no acute distress.  An echocardiogram found no significant aortic stenosis.  Stress testing at that time revealed preserved resting systolic function with no ischemic zones identified.  At a young age, claimant had been diagnosed with Wolff-Parkinson-White Syndrome.  T. 301. Dr. Moraski reported that the problem had "resolved since started on metoprolol extended release."  T. 302.  Dr. Moraski also noted on his examination of May 7, 2007, that the patient, psychiatrically, had a "definite flat affect," but was cooperative and oriented.  Despite complaints of shortness of breath, a chest and lung examination at that time found plaintiff's breath sounds were normal.  Plaintiff's cardiac condition

has required treatment, but the medical record shows that the condition has been effectively attenuated with the treatment prescribed.

Further cardiological testing in 2007 resulted in normal findings. Objective findings revealed no more than mild reductions in function, and improved hypertension. No significant abnormalities appeared from electro-physiology and stress test results. Plaintiff's reported chest area tenderness was not related to a cardiac issue. As noted by the ALJ, significant complications or exacerbations were notably absent from plaintiff's most recent treatment records. Plaintiff had no significant coronary artery disease and showed normal left ventricle function.

Plaintiff underwent a consultative medical examination in July 2009. This examination, performed by Dr. Kasabian, T. 492-93, revealed moderate obstructive ventilatory defect. Plaintiff's fine grip dexterity was normal. The right knee was tender with full muscle strength. Although plaintiff walked with a cane, the doctor noted that plaintiff was able to walk without a limp, not using the cane, for short distances, and had subjective pain. In commenting upon plaintiff's reported respiratory defects, right knee pain, and chest pain, the doctor noted "unclear etiology." T. 493. The assessment at this consultation revealed that plaintiff was able to lift and carry consistent with medium to heavy work, although he might have trouble with right knee pain. Plaintiff's capacity to walk was limited in duration, but not in the total capacity to walk, with additional use of a cane for longer distances.

In July 2009, plaintiff underwent the psychological examination that forms the basis of the argument advanced in this appeal. The consultant, Dr. Susan Danahy, formed a diagnostic impression including "severe problems with the social environment." T. 486. Dr. Danahy also noted, "if his mental status is anywhere near

as bad as it seemed today, he needs to be worked up for the etiology of it." T. 486. Dr. Danahy described Mr. Weymouth's neuropsychiatric presentation as "very dehabilitated." T. 486. Although Dr. Danahy said she was "not sure exactly what to make of Mr. Weymouth's very debilitated neuropsychiatric presentation," and that she "was not completely sure that he was putting forth his best effort during the interview," she also said, "I have no doubt that he would be unemployable in the condition he was in my office today." T. 486.

The ALJ afforded little weight to Dr. Danahy's report, specifically noting as follows:

> There are significant notations regarding the claimant's reluctance to provide information, with reservations noted as to whether the claimant was putting forth a representative amount of effort. Furthermore, significant problems were noted in interpreting the claimant's history. The claimant provided that previous mental health treatment had ended without ongoing psychiatric medications. The profile results of the MMPI testing administered were noted to be completely invalid, with answers noted to be off the chart or suggestive of invalid answers. The accompanying medical source statement provided opinion evidence regarding the claimant's neuropsychological impairment, assessing the claimant to have marked to extreme limitations. The results of this examination and this psychological opinion evidence were afforded little weight due to invalidity of the results as noted, and in light of no duration period with limitations of this degree being found. This assessment was notably contradicted by the examination records provided, and the lack of valid test results further support significantly lesser degrees of cognitive limitations. The inconsistencies with the claimant's examination are also evident in comparison with the claimant's longitudinal treatment history as noted below. Despite the degree of symptoms alleged and assessed by the psychological consultant, the medical evidence of record fails to support the claimant to be mentally limited to a disabling degree. For these reasons, the

> psychological opinion evidence provided by the examining consultant was afforded little weight and the objective examination records notably lack consistency and validity."

T. 18 (reference to exhibit deleted).

## ANALYSIS

Plaintiff raises one point in this appeal of the Commissioner's decision. According to plaintiff, "the ALJ failed to accord proper weight to Dr. Danahy's psychological evaluation." (Doc. 7, 5) Without citation of authority, claimant argues that where a treating physician identifies no limitations, the opinions from a consultative examination may be given greater weight. Also, without citation to authority, plaintiff boldly asserts that Dr. Danahy's opinions should be accepted as true as a matter of law. (Doc. 7, 6) Claimant recognizes, then, that the assessments advanced by Dr. Danahy are unsupported by any other medical evidence of record. This factor, combined with the ALJ's stated reasons for discounting the Danahy report, are fatal to plaintiff's ambitions.

To be sure, the Danahy report, along with the Medical Source Statement of Ability To Do Work-Related Activities (Mental), are, at least in portions, quite dramatic. The examination, performed on July 13, 2009, contains some comments, which, in the overall context of the medical records, appear not only distinct from all other reports, but almost bizarre. Among other things, Dr. Danahy noted the following: claimant was disheveled and unkempt, he spoke so softly the doctor had to strain to hear him, he complained of memory problems so severe he didn't know "what's what," he reported having been arrested for "racism" and imprisoned for the color of his skin, his mental status was so impaired as to interfere with the doctor's

ability to conduct the interview, he had terrible body odor, and his neuropsychiatric presentation was "very debilitated." T. 481-86. The ability to work report is perhaps even more striking. In Dr. Danahy's opinion, claimant was extremely impaired in ability to make judgments on simple work-related decisions, ability to understand and remember instructions, ability to carry out instructions, and ability to make judgments on work-related instructions. T. 488. He would not be able to interact with the public, interact appropriately with a supervisor, interact appropriately with co-workers, or respond to ususal work situations and changes in a routing work setting. T. 489. Dr. Danahy concluded claimant "would not be tolerated in a job setting as he reported today." T. 489.

Claimant does not take issue with the reasons stated by the ALJ as support for the weight given to Dr. Danahy's opinions. The Commissioner, on the other hand, observes that the ALJ afforded the Danahy opinions little weight due to inconsistencies in the exam findings when compared to the overall record and also due to noted invalidity of the examination itself. Dr. Danahy said she had no idea whether Mr. Weymouth was putting forth a representative amount of effort or not. The results of the MMPI psychological testing were completely invalid. The results of the Validity F-Scale score were completely off the chart. The Clinical Scale Profile suggested either random answering or someone who did not understand the questions. T. 485-86. As the Commissioner also notes, claimant has never alleged a mental condition as a basis of disability. The detailed charts in the record do not support the advice of a referral for neuropsychiatric evaluation.[4] To be sure, Dr.

---

[4] Fleshing out the ALJ's observations concerning the contrast between Dr. Danahy's report and the medical evidence of record, the extensive medical charts in this record show, *inter alia*, the

following:

> Claimant had a depression screening at the Escambia Community Clinic on July 9, 2007. The examiner found his mental status to be alert, his general appearance to be cooperative, and that he was oriented in all four spheres. T. 309-10. The examiner also reported claimant had "not lost interest or pleasure in doing things," and "has not felt down or depressed in the past month." T. 309. A September 19, 2007, visit to Escambia Community Clinic revealed a cooperative patient with alert mental status. T. 320.
>
> At the time of his hospital admission for ventricular tachycardia, in August 2007, the admitting physician characterized claimant as "a pleasant 40 year old . . . ." T. 333. Presenting again for work up on his ventricular tachycardia, plaintiff was noted on October 2, 2007, to have no neurological deficits other than the blackout episodes he had reported, both to that physician, and to the ALJ at the hearing. T. 337.
>
> Physical examination by Dr. Moraski on August 1, 2007, revealed a well-developed, well-nourished man in no acute distress. T. 345.
>
> Plaintiff had a pre-op for a cardiac catherization at Baptist Hospital on August 15, 2007. At that time he verbalized his understanding of the proceeding and signed consents. T. 394.
>
> On June 12, 2009, claimant reported to the Health and Hope Clinic complaining of blood pressure, vision, and dental issues. He wanted to start getting his medications through that clinic. T. 518. The treatment plan included a dental reference, pain medication, and scheduling of blood work. T. 519.
>
> Claimant was seen by a pulmonary care group on May 26, 2009, with concerns related to smoking and breathing difficulties. The chart for that visit notes no difficulties with communication, nor any complaints other than breathing difficulties. The general physical exam observed "pleasant male not in any distress." T. 520.
>
> Claimant was seen by Cardiology Consultants in Pensacola on September 28, 2009, some six weeks before the hearing in this case. He complained of vague chest discomfort, and was diagnosed with "atypical chest pain." T. 544. Psychiatric review at that time was negative for depression or hallucinations. Neurological review was negative for seizures, positive for dizziness and memory loss. T. 545.

Danahy did recommend such a referral. Accordingly, and allowing all available latitude to plaintiff's argument, I will consider the possibility of error in the ALJ's failure to further develop this aspect of the medical record.

The Social Security disability benefits process is inquisitorial rather than adversarial, *see Sims v. Apfel*, 530 U.S. 103, 110-11, 120 S. Ct. 2080, 2085, 147 L. Ed. 2d 80 (2000), *Crawford & Company v. Apfel*, 235 F.3d 1298 (11th Cir. 2000), and is informal. *See Perales*, 402 U.S. at 400-01; *Kendrick v. Shalala*, 998 F.2d 455, 456 (7th Cir. 1993); 20 C.F.R. § 404.900(b). It is well-established in this Circuit that the ALJ has an affirmative duty to develop a full and fair record. *See Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995); *Lucas v. Sullivan*, 918 F.2d 1567, 1573 (11th Cir. 1990); *Smith v. Bowen*, 792 F.2d 1547, 1551 (11th Cir. 1986); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). The duty to develop the record exists even though the plaintiff is, as here, represented by a lawyer or paralegal.[5] *See Brown*, 44 F.3d at 934 (citing *Clark v. Schweiker*, 652 F.2d 399, 404 (5th Cir. Unit B July 1981)); *Smith*, 792 F.2d at 1551 (citing *Cowart*, 662 F.2d at 735). This duty requires that the ALJ "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," be "especially diligent in ensuring that favorable

---

Examination by Cardiology Consultants (Dr. Moraski) on September 8, 2009, revealed claimant was oriented to time, person, and place, and demonstrated appropriate mood. T. 546.

[5] Noting this statement of law for the sake of thoroughness, I would also observe that neither plaintiff nor his lawyer ever mentioned the neuropsychiatric angle at the hearing. Plaintiff testified only to physical limitations, and his lawyer asked no questions about psychological, memory, or emotional factors. Notable also, nothing on the record at the November 6, 2009, hearing lends any credence at all to Dr. Danahy's then-recent characterizations of claimant's appearance ("disheveled," "unkempt," "noticeable body odor," etc.).

as well as unfavorable facts and circumstances are elicited," *see Cowart*, 662 F.2d at 735 (citations omitted), and "investigate the facts and develop the arguments both for and against granting benefits." *See Crawford & Co.*, 235 F.3d at 1304.

That does not mean, however, that the ALJ must search to the last document to find every possible piece of relevant or potentially favorable evidence. Rather, he must have sufficient evidence to decide the case. The seminal cases in this circuit on the ALJ's duty to develop the record are *Ford v. Secretary of Health and Human Services*, 659 F.2d 66 (5th Cir. Unit B Oct. 1981), and *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984). Both held that it is not necessary for the ALJ to order a consultative examination unless the record established that such an examination was necessary to enable the ALJ to make a decision. Where the ALJ has sufficient information to decide the case, however, he can do so. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) ("Here, the record as a whole is neither incomplete nor inadequate. Instead, the record was sufficient for the ALJ to evaluate Graham's impairments and functional ability, and does not show the kind of gaps in the evidence necessary to demonstrate prejudice."). Moreover, "the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a), (c)).

Here, I can find no fault with the ALJ's reasons for discounting the Danahy opinions, and therefore, no error appears with the ALJ's implicit decision to not seek further psychological evaluation. As further support for this conclusion, I note that plaintiff has asked only for reversal based upon the Danahy report, and not for another evaluation.

Based upon the foregoing analysis, the decision is in compliance with appropriate legal standards. *See Carnes*, 936 F.2d at 1218 ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). It is therefore respectfully RECOMMENDED:

1. The application for a period of disability and disability benefits and for supplemental security income be DENIED and the Commissioner's decision be AFFIRMED.

2. The clerk be directed to close the file.

At Pensacola, Florida, this 12th day of March, 2012.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**